UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.  05-10325-RCL

JAMES G. HEYWARD,

    Plaintiff,

v.

CONTE, *et al.*,

    Defendants.

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Now come defendants Peter Pepe (as Successor to "Conte") and Brian Collins, and hereby submit their Memorandum of Law in support of their motion for summary judgment.

## PROCEDURAL BACKGROUND

The *pro se* plaintiff, James G. Heyward, is an inmate lawfully incarcerated within the Department of Correction, who is currently housed at the Massachusetts Correctional Institution at Norfolk, Massachusetts ("MCI-Norfolk"). See Complaint, ¶2. At all times relevant to his complaint, he was a pre-trial detainee pursuant to G.L. c.276, §52A, who was housed within the Department of Correction, first at the Massachusetts Correctional Institution in Concord, Massachusetts ("MCI-Concord") and later at the Souza-Baranowski Correctional Center in Shirley, Massachusetts ("SBCC"). Id. The named defendants are "Superintendent Conte of MCI-Concord" and MCI-Concord Inner Perimeter Security ("IPS") Lt. Brian Collins. Id. at ¶¶3-4. The plaintiff also names three

"John Doe" defendants who have not yet been identified. Id. at ¶¶5-7. All defendants named in the Complaint are sued only in their individual capacities. Id. at ¶¶3-7.

On April 18, 2005, the plaintiff served current MCI-Concord Superintendent Peter Pepe, stating on the return "'Individual Capicity [sic]'", Superintendent Peter A. Pepe, Jr. is Supt. Contes' successor [sic] in office." See Return, a true and accurate copy of which is attached hereto as Exhibit A. Accordingly, it appears that defendant Pepe is sued in both his individual and official capacity.

On May 12, 2005, the served defendants moved for an enlargement of time within which to file a responsive pleading. See Docket Entry No. 8. These defendants now submit the following dispositive motion.

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

1. Plaintiff James G. Heyward was first incarcerated at MCI-Concord as a pre-trial detainee on or about July 25, 2000. Complaint, ¶2.

2. At all times relevant to this Complaint, the plaintiff was involved in two pending criminal actions: Commonwealth v. Heyward, Suffolk Criminal No. 1998-10798 and Commonwealth v. Heyward, Suffolk Criminal No. 2000-10814. See the respective docket reports, true and accurate copies of which are attached hereto as Exhibits B and C.

3. On or about January 23, 2002, two (2) weapons were confiscated from the plaintiff's cell during a routing cell search. Complaint, ¶17; see Disciplinary Report dated 1/23/02, a true and accurate copy of which is attached hereto as Exhibit D.

4.  At the time of the search, the plaintiff shared the cell with another inmate[1]. Id.

5.  As a result of the discovery, the plaintiff was taken into administrative segregation.  Complaint, ¶19.

6.  The plaintiff was not permitted to bring canteen items with him to administrative segregation.  Complaint, ¶35.

7.  Defendant IPS Lieutenant Brian Collins conducted an investigation into the incident.  See Incident Report dated January 24, 2002, a true and accurate copy of which is attached hereto as Exhibit E.

8.  On or about January 23, 2002, the plaintiff's cellmate stated that he had purchased the weapons for protection due to an enemy problem.  See Exhibit E.  He refused to identify either the inmate from whom he purchased the weapons or the enemy. Id.

9.  On or about January 24, 2002, defendant Collins interviewed the plaintiff. See Exhibit E.  The plaintiff disclaimed any knowledge of the shanks or his cellmate's enemy problems.  Id; Complaint, ¶¶27-30.  He was informed that both cellmates were considered responsible for contraband located in their shared cell.  Id.

10.  On or about January 24, 2002, defendant Collins re-interviewed the plaintiff's cellmate.  See Exhibit E.  During the second interview, the cellmate stated that the plaintiff had nothing to do with the weapons.  Id.  However, the inmate also stated that he had told the plaintiff about his enemy incident.  Id.

---

[1] Because the information concerning the cellmate is Criminal Offender Record Information ("CORI") which the defendants are prohibited from disclosing by statute, it has been redacted throughout these exhibits.

11. On or about January 29, 2002, the plaintiff was transferred from MCI-Concord to SBCC. Complaint, ¶32.

12. The plaintiff's transfer was occasioned by the limited segregation space at MCI-Concord. See Affidavit of John Marshall and Exhibits thereto, a true and accurate copy of which is attached hereto as Exhibit F. Relief was requested from SBCC, and plaintiff was sent there pending the conclusion of the investigation and a final determination whether he would be charged with a disciplinary report for the recovered weapons. Id.

13. It was, at the times relevant to this Complaint, and still is today, common for SBCC to provide segregation relief when requested by another institution. See Exhibit F, ¶6.

14. At SBCC, the plaintiff was placed in the Special Management Unit ("SMU"). Complaint, ¶37.

15. The plaintiff remained in the SMU at SBCC for four (5) days, until February 1, 2002. Complaint, ¶46.

16. On February 1, 2002, since MCI-Concord officials had concluded their investigation and decided not to pursue a disciplinary proceeding against the plaintiff, he was released from administrative segregation and placed instead in the Orientation Unit at SBCC. See Exhibit F and Complaint, ¶46.

17. It was, at the times relevant to this Complaint, and still is today, common for the Department to house pre-trial inmates at both Old Colony Correctional Center ("OCCC") in Bridgewater, Massachusetts and at SBCC, due to the limited bed space available at MCI-Concord. See Exhibit F, ¶7. MCI-Concord, was and is the State's

designated Reception and Diagnostic Center, and receives new inmates on a regular basis, including, but not limited to, new commitments from the courts; parole violators; probation surrenders; failures in other institutional settings (ie; returns to higher security); and County Jail inmates with prior State commitments, like the plaintiff.  Id.  With the regular influx of inmates and pre-trial detainees, there were many times when bed space at MCI-Concord was limited or unavailable.  Id.  Accordingly, it was not unusual for a pre-trial detainee who was administratively transferred to either OCCC or SBCC from MCI-Concord to remain there as an administrative convenience, rather than trying to find bed space for that inmate at MCI-Concord and return him there.  Id.  Indeed, between March 2002 through September 2003, the dates the plaintiff was housed in general population at SBCC, approximately seventy-two (72) pretrial detainees were transferred to SBCC.  Id.

  18. On February 12, 2002, the plaintiff wrote to the SBCC Property Officer asking how he could obtain clothing, since 52A inmates were not permitted to purchase it through the canteen.  See Inmate Grievance and supporting documents, a true and accurate copy of which is attached Exhibit G, at p.14.  The property officer responded by noting at the bottom of the letter that the inmate could submit a state issue form for socks, t-shirts and underwear.  Id.

  19. On February 17, 2002, the plaintiff wrote to Superintendent Edward Ficco and complained that he had not been provided "state soap."  See Letter dated February 17, 2002, a true and accurate copy of which is attached hereto as Exhibit H.

  20. On or about February 28, 2002, the plaintiff was moved into general population and housed in the P2 Unit at SBCC.  Complaint, ¶47.

21. Also on February 28, 2002, the plaintiff wrote to the Unit Team Manager stating that he had not received a disciplinary report "to justify [his] transfer" to SBCC and requesting that a television, headset and radio be provided to him while he remained at SBCC. See Exhibit G at p.12.

22. On March 10, 2002, the plaintiff wrote a letter to Superintendent Edward Ficco, again stating that he had received no disciplinary report "to justify [him] being transferred" to SBCC, and asking for a television, headphones and radio. See Exhibit G at p.13.

23. On March 26, 2002, the plaintiff received a letter from Unit Manager Toni L. Lancaster explaining how he could obtain soap and toiletries. See Memo dated 3/26/02, a true and accurate copy of which is attached hereto as Exhibit I.

24. On April 3, 2002, the plaintiff filed a grievance at SBCC complaining that he had been sentenced to SBCC after a disciplinary infraction, that his canteen from MCI-Concord had been confiscated and that he should not be required to purchase a television, radio or headphones, but they should be provided to him at state expense. See Exhibit G. He attached three (3) letters to staff to his grievance. Id.

25. On April 12, 2002, the plaintiff was advised that he was being held at SBCC as a 52A and not as discipline, and that there had been no change in his status. He was advised to purchase his appliances through property and canteen. See Exhibit G at p.1.

26. On April 17, 2002, the plaintiff appealed the grievance decision to Superintendent Edward Ficco. See Grievance Appeal and supporting documents, a true and accurate copy of which is attached hereto as Exhibit J. It was initially rejected as it

6

was not accompanied by the original completed grievance. Id. at p.1. The appeal was received on May 3, 2002. Id. at p.2.

27. The plaintiff provided a copy of a Notice dated January 23, 2002 and reviewed on January 29, 2002 from MCI-Concord concerning his SMU placement there. See Exhibit J at p.11. The document has a crossed-out "X" indicating that the plaintiff was placed in the SMU awaiting a hearing for a violation of institution rules or regulations, and a second "X" indicating that he was placed in administrative segregation following a disciplinary hearing. Id.

28. On May 8, 2002, the Institutional Grievance Coordinator ("IGC") briefed the superintendent on the issues raised in the plaintiff's grievance. See Memo dated May 8, 2002, a true and accurate copy of which is attached hereto as Exhibit K. She advised that the plaintiff was at SBCC solely due to his 52A status and not for disciplinary reasons, that his loss of canteen prior to his transfer was standard procedure, and that he could obtain clothing by submitting a state issue form. Id. She further noted that although 52A inmates were not technically permitted to purchase appliances, SBCC practice was to permit purchases on a one to one basis with a waiver. Id. She further noted that the plaintiff had been provided with a radio. Id.

29. On June 5, 2002, the plaintiff wrote to SBCC Superintendent Edward Ficco stating that he had been transferred to SBCC as discipline and seeking expungement of the "action." See Letter dated 6/5/02, a true and accurate copy of which is attached hereto as Exhibit L.

30.   After reviewing the grievance package, the information provided by the IGC and follow-up information as indicated on the briefing memo, Superintendent Ficco denied the plaintiff's appeal.  See Exhibit J at p.2.

31.   On July 25, 2002, the plaintiff was advised that his appeal of Grievance No. 02-152 had been reviewed in accordance with 103 CMR 491 and that the Department Grievance Coordinator concurred with the Superintendent's decision to deny the appeal. See Letter dated 7/25/02, a true and accurate copy of which is attached hereto as Exhibit M.

31.   On or about August 18, 2003, the plaintiff was moved to the G2 Unit at SBCC.  See Bed Management History covering July 2002 through September 2003, a true and accurate copy of which is attached hereto as Exhibit N.

32.   On or about September 22, 2003, the plaintiff was released to Nashua Street Jail, from whence he was subsequently convicted, sentenced and returned to state custody on or about September 23, 2003.  See Movement History, a true and accurate copy of which is attached hereto as Exhibit O.

## ARGUMENT

**I.   THE PLAINTIFF HAS FAILED TO STATE ANY CLAIM FOR DAMAGES AGAINST DEFENDANT PEPE IN HIS OFFICIAL CAPACITY AS A MATTER OF LAW**.

According to the summons served by the plaintiff on defendant Pepe, he is sued as successor to "Superintendent Conte." The successor of an official sued in his official capacity automatically assumes his predecessor's rule in the litigation. Mass.R.Civ.P. 25(d)(1).  However, a suit against defendant Pepe in his official capacity as successor superintendent of MCI-Concord is the same as a suit against the Commonwealth of

Massachusetts Department of Correction,"[the] entity of which [the] officer is an agent." Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978). A state official acting his official capacity cannot be sued for damages in a section 1983 action. Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995). Accordingly, the plaintiff's claims for damages against defendant Pepe in his official capacity must fail as a matter of law.

## II. **THE PLAINTIFF HAS FAILED TO STATE ANY CLAIM AGAINST DEFENDANT PEPE IN HIS INDIVIDUAL CAPACITY AS A MATTER OF LAW WHERE HE IS ENTITLED TO QUALIFIED IMMUNITY**.

Moreover, to the extent the plaintiff seeks to sue defendant Pepe in his individual capacity, his claims must likewise fail. In order to overcome defendant Pepe's qualified immunity, the plaintiff must show that *he directly participated* in violating the plaintiff's clearly established rights. O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 142 (1993)(emphasis added) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987); Rizzo v. Goode, 423 U.S. 362, 371 (1976); Kostka v. Hogg, 560 F.3d 37, 40 (1st Cir. 1977)). However, there are no allegations whatsoever concerning defendant Pepe's involvement in this incident, which is hardly surprising, since he was not the Superintendent of either MCI-Concord or SBCC at the times relevant to the plaintiff's Complaint, and nothing indicates that he had any role in the circumstances of the plaintiff's segregation, subsequent transfer and housing at SBCC. See generally, Complaint. Accordingly, each of the plaintiff's claims against defendant Pepe in his individual capacity, to the extent the plaintiff's Complaint can be fairly read to contain same, must be dismissed.

### III. THE DEFENDANTS DID NOT VIOLATE PLAINTIFF'S DUE PROCESS RIGHTS AS A MATTER OF LAW.

The plaintiff first alleges that defendant Pepe (apparently in his official and individual capacities) and defendant Collins (in his individual capacity) violated his due process rights under the Fifth[2] and Fourteenth Amendment.  Complaint, ¶¶54-59 and Relief Requested, ¶¶A1 and A3.  The plaintiff appears to allege that the defendants violated his due process rights when they placed him in administrative segregation at MCI-Concord, and then transferred him to SBCC.  Complaint, ¶59.  Reading the complaint with all the deference due to a *pro se* litigant, it appears that the plaintiff is challenging two separate actions as violative of his due process rights:  (1) his placement in administrative segregation in MCI-Concord's "Department 9" and in the SMU at SBCC; and, more generally, (2) his transfer to SBCC and later placement there in general population.  Accordingly, the defendants address each issue separately below.

#### A. The Plaintiff's Placement in Administrative Segregation Did Not Violate Due Process.

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law...the proper inquiry is whether those conditions amount to punishment of the pretrial detainee."  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  "[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  Id.

---

[2] The due process clause of the Fifth Amendment applies only to actions of the federal government. See Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447, 449 (1st Cir. 1983).  Accordingly, to the extent the plaintiff has stated such a claim, it must be dismissed as a matter of law as no federal government action was taken in this case.

Notwithstanding the foregoing, however, a detainee may be subjected "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." Id. at 536. Accordingly, the Court "must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to "punishment." Id. at 539.

In this case, the plaintiff challenges his placement in administrative segregation. The Supreme Court has acknowledged that administrative segregation is "used to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer" and does not implicate "an interest independently protected by the Due Process Clause." Hewitt v. Helms, 459 U.S. 460, 466-470 (1983). Accordingly, no particular process is constitutionally required prior to placement in administrative segregation. See Alexander v. Roberts, 2003 U.S. Dist. LEXIS 3782, *43 (E.D. Louisiana 2003) (INS detainee not entitled to process before placement in administrative segregation after he refused to cut his dreadlocks as required by prison policy); Fuentes v. Wagner, 206 F.3d 335, 343 (3d Cir. 1999), cert. denied, 531 U.S. 821 (2000) (pretrial detainee not entitled to process prior to placement in restraint chair after he kicked his cell door, swung at officers and continued to make oral threats after his restraint); Zarnes v. Rhodes, 64 F.3d 285, 291 & n.5 (7th Cir. 1995) (pretrial detainee not entitled to process prior to placement in administrative segregation for her own protection and protection of other inmates after

11

a verbal confrontation); Butler v. Westchester County, 2000 U.S. Dist. LEXIS 3981 (S.D.N.Y. 2000) (pretrial detainee not entitled to process prior to mere transfer to "less amenable and more restrictive quarters for nonpunitive reasons."); Cooper v. Bowles, 1997 WL 361879 at *2 (N.D. Tex. 1997) (pretrial detainee not entitled to process prior to placement in administrative segregation for five months where there was no evidence it was for punitive purposes); Dean v. Thomas, 933 F.Supp. 600 (S.D. Miss. 1996) (pretrial detainee's due process rights were violated where administrative segregation was admittedly for the purpose of punishment and there was no hearing with attendant process).

In this case, the facts, even when viewed in the light most favorable to the plaintiff, clearly indicate that he was placed in administrative segregation for non-punitive administrative purposes. The plaintiff admits he was told he was placed in administrative segregation due to the fact that weapons were located in his cell during a routine search. Complaint, ¶19. Records indicate that MCI-Concord staff conducted an investigation into the ownership of the weapons by interviewing the plaintiff and his cellmate. See Exhibit E. Disciplinary reports were written up on both inmates, with the intention of pursuing discipline against them both. See Exhibits D and E. However, after the investigation concluded and was reviewed by MCI-Concord staff, the disciplinary report written for the plaintiff was dropped, as indicated by the fact that it was never served on him and no proceedings followed. See Exhibit F and Complaint, generally. During the time that the plaintiff was being investigated and staff were determining how they would proceed, the limited segregation space at MCI-Concord necessitated the transfer of both the plaintiff and his cellmate to Souza-Baranowski Correctional Center.

See Exhibit F. Once MCI-Concord staff determined that they would not pursue the disciplinary proceedings against the plaintiff, he was released from administrative segregation and placed in the orientation unit. Id. From there, he was placed in general population. In all, the plaintiff spent a total of ten (10) days in administrative segregation.

Indeed, the only evidence upon which the plaintiff relies for his proposition that he was in segregation due to punishment is a copy of a notice that indicates he was placed in administrative segregation following a disciplinary hearing (it also noted that he was placed in administrative segregation pending a disciplinary hearing). See Exhibit J, at p.12. This notice is at odds with all other paperwork maintained concerning the plaintiff's status at that time, suggesting that the notation may have been made in error[3]. The reasons set forth on the notice are immaterial, however, as it plainly notified the plaintiff he was in *administrative segregation*. See Exhibit J, p.12. Pursuant to Department regulations, administrative segregation is

> [a] temporary form of separation from general population used when the continued presence of the inmate in the general population would pose a serious threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution, e.g., inmates pending investigation for a disciplinary or criminal offense or pending transfer may be placed in administrative segregation.

103 CMR 423.06 (Special Management) (12/29/95). Placement in administrative segregation may occur for a number of reasons, including, but not limited to, awaiting a hearing for a disciplinary offense, pending an investigation of a disciplinary offense or following a disciplinary hearing. 103 CMR 423.08(1)(a)-(c) & (g). The regulations make quite clear that disciplinary detention is an *entirely* different process, in that it is

---

[3] Indeed, the undersigned counsel was unable to find a copy of this document among the plaintiff's institutional records.

13

> a separation from the general population of an inmate who has been found guilty of a serious violation of the regulations....This status may be imposed only after complying with all provisions of 103 CMR 430.00: Disciplinary Proceedings.

103 CMR 423.06. In this case, it is clear, and plaintiff readily admits, that he did not receive a disciplinary report or engage in disciplinary proceedings pursuant to 103 CMR 430. See generally, Complaint. Moreover, the notice provided to him clearly indicated he was in administrative segregation, not disciplinary detention. See Exhibit J, p.12. Accordingly, as the segregation was not for punitive purposes but was clearly intended for the administrative purposes of investigating the weapons discovered in the plaintiff's cell and determining whether to charge him with a disciplinary offense, the plaintiff was entitled to no process, and his due process claim against the defendants must fail.

### B. The Plaintiff's Transfer to Higher Custody Did Not Violate Due Process.

Pretrial detainees and prisoners have no constitutional right to be housed at any particular prison facility. Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976); Lipton v. County of Orange, 315 F.Supp. 2d 434, 447 (S.D.N.Y. 2004) (transfer of pretrial detainee to higher custody, without more, did not implicate due process); Rhodes v. Alameda County Sheriff's Dep't, 1999 U.S. Dist. LEXIS 11466 at *8-9 (N.D. Cal 1999); Covino v. Vt. Dep't of Corr., 933 F.2d 128, 129 (2d Cir. 1991) (per curiam). Correctional officials' discretion to transfer pretrial detainees, however, has limits. Detainees may not be transferred in retaliation for the exercise of a constitutional right. See e.g., Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998). In addition, some circuits have held that detainees may not be transferred where it "significantly interferes" with their access to counsel. Cobb v. Aytch, 643 F.2d 946, 959-60 (3d Cir. 1981) (granting injunctive relief limiting city's authority to transfer inmates to

14

far distant locales); c.f. U.S. v. Lyons, 898 F.2d 210, 216 n.6 (1st Cir. 1990) (prisoner not prejudiced by pretrial transfer to different facility.

In this case, the plaintiff has provided no evidence that his transfer from MCI-Concord in Concord, Massachusetts, to SBCC in Shirley, Massachusetts, "significantly interefered" with his access to counsel. SBCC is only slightly more than seventeen miles from MCI-Concord[4]. As the plaintiff's criminal charges pending during that time were out of Suffolk County Superior Court, located in Boston, Massachusetts, the additional seventeen miles could hardly be considered to "significantly interfere" with his access to counsel. See Exhibits B and C. Moreover, the plaintiff makes no allegations whatsoever in his Complaint that he was denied access to counsel, nor is there any indication on the docket sheets from the criminal charges pending during the relevant time period to suggest that his access to counsel was affected in any way. Id.

Finally, even when examining the transfer to SBCC under the standard discussed supra, in Section I.A., to wit, whether the disability was imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose, the plaintiff's argument must fail. The plaintiff's initial transfer to SBCC was an administrative convenience, as was his continued housing there in general population. See Exhibit F. Indeed, he was only one of seventy-five (75) 52A's to be transferred to SBCC and housed there during the relevant time period. Id. The plaintiff's only proffered evidence to the contrary is the notice he received that he had been placed in administrative segregation following a disciplinary hearing, which the plaintiff admits was in error as no disciplinary hearing had taken place. See Exhibit J, p.12. Again, as discussed above, the notice clearly indicated that the segregation was administrative, and

---

[4] According to www.mapquest.com.

15

not disciplinary, in nature. Id. Accordingly, as there is no evidence in the record that the plaintiff's transfer to SBCC was punitive in nature, the plaintiff's due process claim must be dismissed.

## II. THE DEFENDANTS DID NOT RETALIATE AGAINST THE PLAINTIFF AS A MATTER OF LAW.

The plaintiff alternatively argues that defendant Pepe (in his individual and official capacities) and defendant Collins (in his individual capacity) transferred him to SBCC in retaliation. Complaint, ¶¶60-61. In order to prevail on a claim of unlawful transfer, however, the plaintiff must be able to demonstrate that the alleged improper decision would not have been made "but for" the impermissible purpose of retaliation. Layne v. Vinzant, 657 F.2d 468, 475 (1st Cir. 1981); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); Association for Reduction of Violence v. Hall, 558 F.Supp. 661, 662-663 (D.Mass. 1983). Conversely, a prisoner cannot sustain a claim of allegedly impermissible conduct where the actions of the prison officials were also supported by a permissible purpose. See Scarpa v. Ponte, 638 F.Supp. 1019, 1029 (D.Mass. 1986). Indeed, the Scarpa court held that even if the defendants had an impermissible reason for disciplining the prisoner, they would still not be liable if they also had independent, permissible reasons for doing so. Id. "[T]he requirement of a 'but for' showing together with the wide latitude afforded prison officials in ordering transfers may make summary judgment particularly appropriate" to prisoners' claims of retaliation. McDonald, 610 F.2d at 18-19.

In this case, the plaintiff fails to even allege a "chronology of events which may be read as providing some support for an inference of retaliation" by defendants. Id. at 18. There are no specific allegations at all with regard to any involvement by

16

Superintendent Pepe in the transfer (as he was not superintendent of MCI-Concord at the time) and none concerning Lt. Collins other than the multiple hearsay allegation that an unidentified officer told the plaintiff "Lt. Collins doesn't want you at MCI-Concord, period." Complaint, ¶45. There is simply no chronology of events explaining or even supporting an inference that <u>any</u> person had reason to retaliate against the plaintiff by transferring him. <u>See</u> <u>generally</u>, Complaint. Moreover, the Department advised the plaintiff in 2004 that the reason for his transfer was for administrative convenience, in that MCI-Concord frequently requires segregation relief due to its constant influx of inmates. <u>See</u> Exhibit F. Finally, the plaintiff, along with seventy-five other pre-trial detainees, remained at SBCC for the same reason – administrative convenience due to limited bed space at MCI-Concord. <u>Id</u>.

As the plaintiff has failed to adequately plead a retaliatory transfer claim, and as the Department had an independent, permissible reason for transferring the plaintiff, the defendants are entitled to judgment as a matter of law.

### III.  **THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE PLAINTIFF'S EIGHTH AMENDMENT CLAIM**.

Finally, the plaintiff alleges that defendant Pepe (in his official and individual capacities), and defendant Collins (in his individual capacity) violated his Eighth Amendment rights by submitting him to punishment while he was a pretrial detainee. Complaint, ¶62, Relief Requested ¶¶A1-2. "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." <u>Ingraham v. Wright</u>, 430 U.S. 651, 671, n.40 (1977) (citing <u>U.S. v. Lovett</u>, 328 U.S. 303, 317-318 (1946)). "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it

17

has secured a formal adjudication of guilt in accordance with due process of law." Id. (citing Trop v. Dulles, 356 U.S. 86 (1958) (Eighth Amendment applied to punishment of denationalization when desertion had been previously established at a criminal trial); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 162-167, 186 and n.43 (1963) (Court refused to apply Eight Amendment to punishment of denationalization for evading draft)).  As discussed more fully above at Section IA, "[w]here the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Ingraham, 430 U.S. at 671, n.40. Accordingly, as the plaintiff was a pretrial detainee at all times relevant to his Complaint, the Eighth Amendment does not apply as a matter of law and the plaintiff's claim must be dismissed.

## CONCLUSION

WHEREFOR, as the plaintiff has failed to state any actionable claims against the named defendants as a matter of law, the defendants are entitled to judgment as a matter of law on each claim against them.

Dated: June 27, 2005

Respectfully submitted,

Defendants,
By their attorneys:

NANCY ANKERS WHITE
Special Assistant Attorney General
_____/s/_____
Wendy C. Weber, Counsel
BBO No. 633950
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110-1300
(617) 727-3300 x189

**The Court has excused compliance with Local Rules 7.1(A)(2) and 37.1 by the defendant in this case by order dated May 18, 2005.**

<b><u>CERTIFICATE OF SERVICE</u></b>

I hereby certify that on this date a true copy of the above document was served upon the plaintiff appearing *pro se* by first class mail.

Date: <u>June 27, 2005</u>     _____/s/_____
                                            Wendy C. Weber, Counsel