(1)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-10325RCL.

JAMES G. HEYWARD,

    Plaintiff,

v.

CONTE', et als.,

    Defendants.

## PLAINTIFF'S DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now comes the plaintiff James G. Heyward, acting Pro se and hereby submits his Declaration with Exhibits in support of plaintiff's Opposition To Defendants' Motion For Summary Judgment, or In the Alternative Summary Judgment For the Plaintiff.

I, James G. Heyward declares under the penalty of perjury:

1. I am the plaintiff in the above-entitled case, I make this Declaration in Opposition to Defendants' Motion For Summary Judgment, on my claims concerning the deliberate indifference, alleging wrongful placement in administrative segregation, denial of due process in an disciplinary procedures and denial of notice of review hearing with an opprtunity to respond to the disciplinary charges were in violation of Due Process Clause of the 14th, 5th, and 8th Amendment to the U.S. Constitution, conspired to further punish and violate my rights to be free of retaliation by transferring plaintiff to an Super Maximum Security Facility Souza-Baranoswki Correctional Center(S.B.C.C.) against plaint by defendants Conte', Pepe, Collins and John Does 1,2,3. When defendants had known day of incident, and day after that plaintiff had not

broken any institutional regulations.

    2. The defendants' Memorandum of Law in support of Motion For Summary Judgment claim in summary, two (2) weapons were confiscated from the plaintiff's cell, during a routine cell search, while plaintiff was at Suffolk Superior Court. (see Exhibit A, D-Report dated 01/23/02, a true and accurate copy of the D-Report previously submitted by the defendants), a cell which is shared with another Pretrial Detainee Shaheed Dameqqah A30827. Plaintiff was placed into administrative segregation on his return from court. Defendant Collins conducted an investigation into incident (see Exhibit B, Incident Report dated January 24, 2002, reporting staff member, a true and accurate copy of Incident Report previously submitted by defendants). On or about January 23, 2002, plaintiff's cellmate stated that he had purchased the weapons for protection due to an enemy proble. (see Exhibit B Incident Report, 1st par., 4th ln.), and refused to identify either the inmate from who he made purchase or the enemy.

Plaintiff was interviewed by defendant Collins on or about January 24, 2002. (see Exibit B Incident Report 2nd Par.). Where plaintiff disclaimed any knowledge of the shanks or his cellmate's enemy problems. On or about January 24, 2002, defendant Collins reinterviewed the plaintiff's cellmate, who stated that the plaintiff had nothing to do with the weapons. And admitted ownership for an second time. However, the inmate also stated that he told the plaintiff about his enemy problem. On or about January @9, 2002, the plaintiff was transferred from MCI-Concord. (see Exhibit C Affidavit of Associate Deputy Commissioner John Marshall and exhibits thereto, pg.2, ln.4.

a true and accurate copy of Affidavit previously submitted by the defendants). Relief was requested from S.B.C.C. and plaintiff was sent there pending the conclusion of the investigation and final determination whether he would be charge with a disciplinary report for the recovered weapons.

3. The defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These issues are identified in the accompanying statement of Disputed Factual Issues filed by plaintiff. The facts are set out in this declaration.

4. On January 23, 2002, I was told by CO. Horton that I had court.

5. I went to breakfast, then pickedup my canteen items and returned back to my housing block (J#-Block), placed canteen bag in cell.

6. I then proceeded to the holding area, where I was then transported to Suffolk Superior Court.

7. On my return from court, approximately 8:30 p.m., I was told by CO. Coren, that I was going to Dept.9. That while I was gone CO. Horton, shook down my cell and found an shank. Your cellie is already ther.

8. I was then placed in administrative segregation. While being escorted, the CO. bringing me states, "You shouldn't be in here. Your cellie admitted that the shanks were his and that you didn't know he had it.""Hopefully they let you go tomorrow."

9. On or about January 25, 2002, defendant Conte', John Doe3 are making their rounds in the Dept.9. I repeatedly ask each one,

"Why am I in here?" To which both stae, "You know why!" I state, "I don't know what's happening!" No one has spoken to me". Both leave without further assistance.

10. On or about January 26, 2002, my cellmate, informs me that he has just seen the defendant John Doe 2(D-Officer), who is on his way to speak to me, and that he has supposely ripped up my D-Report.

11. Cellmate Dameqqah Shaheed admitted that the shanks were his, and that I had now knowledgement of his doings and that he had received his sanctions. Also states that the defendant John Doe 2, had just came now, outside to speak to him. I informed him, :I still haven't seen the defendant John Doe 2, so this matter could be straightened out".

12. I had gone to my celldoor to lookout, the defendant John Doe 2 had out of the Dept.9., without speaking to me.

13. Defendant IPS Sgt. John Doe 1, came to my celldoor and ordered me to cuff up. I did as told, and was brought downstairs, to be interviewed by defendants Collins, defendant John Doe 1.

14. When I was told of the shanks, by defendant Collins, I stated, "I knew nothing about any contraband". Defendant Collins stated, "We believe you told your cellie to say it's his." I stated. "Your crazy I wasn't even here, I was in court, nor did I know of any so-called shank." "Your mad because he admitted to that shank being his from the onset, I know nothing".

15. I was asked by defendant Collins, "If my cellie has any enemy or problems?" To which I stated, "I don't talk to him like that nor do I be watching him!" "You need to be asking him those questions. I have enough problems fighting my own cases now. Defend-

ant Collins states, "O.K. you can go".

16. On January 29, 2002, I still had not received my D-Report. That morning I spoke to an CO. and asked, "Why am I still here in the hole, I haven't received an D-Report nor have I spoken to an D-Officer. CO. states, "I don't know, but hold on one minute, when I go downstairs I'll check and ask.

17. When the CO. comes back, he tells me that I am being transferred to the Super Maximum Souza-Baranoswki Correctional Center (S.B.C.C.), so pack it up. I did as ordered.

18. I was transferred along with 3 others out of segregation. I was taken to property, along with my cellmate. Our property had been mixed up, we had to sort thru our belongings. I was not allowed to bring any of my canteen items, I had just purchased on 01/23/02, nor any of my prior items that I had brought. Becauses one is not allowed to bring canteen items with them.

19. Once arriving at S.B.C.C., my cellmate and I were given red outfits, which meant that we were going to be placed in SMU. the other 3 inmates were handed tan outfits, which meant that they were going to be placed into general population-Orientation Unit.

20 I immediately stated, "What am I going to the hole for? I don't even have an ticket, I shouldn't even be here". CO. states, "For whatever you did at where you came from." I was finally placed inSMU cell.

21. From 01/29/02-02/01/02, each day, I stated to any S.B.C.C. officials, making rounds, that I was not suppose to be in the SMU, nor here at S.B.C.C. No one listened nor was I seen by anyony pertaining to why I was at S.B.C.C.

(6)

22. As officials at S.B.C.C. made their rounds, everyone stated, "You had to have done something or you would not be here!"

23. I spoke to an Lt., that was walking around in civil clothes, and told him of my problem, of not having a D-Report nor should I be here at S.B.C.C. or in the SMU.

24. The Lt. states, "You say this everyday, I'm tired of you stopping me."

25. On 01/31/02, I spoke to the Lt. for an 3rd time, who says, "He's tire of me. Do you know the IPS Lt. Collins, up at MCI-Concord, I'm going to call him, to see if you're right about not having a ticket. If he says you have an ticket I don't want to hear another word. I stated, "Go ahead".

26. On 02/01/02, the Lt. came down to make his rounds. I ask, "Did you make that call?" Which he states, "Yes, and you are right, you do not have any tickets. I'm going to put you on the bail list".

27. I ask the Lt. "If I don't have any tickets, then why am I here then?" To which the Lt. states, Lt. Collins doesn't want you at MCI-Concord, period. But you don't have ant tickets.

28. On 02/01/02, I was moved to the P2 Unit, which is the Orientation Unit.

29. On 02/28/02, i was moved to the Ps Unit, which is an aggressive housing unit.

30. I received an Notice Pursuant to 103 CMR 423 Special Management. dated 01/29/02, marked with an X-stating, "Is placed in Administrative Segregation following a disciplinary hearing (see Exhibit D Ln. 8,..a true and accurate copy of Notice).

31. I had spoken to S.B.C.C.'s Superintendent Ficco, pertaining to my placement, and the fact that I didn't have

(7)

an ticket or should be at S.B.C.C. To which Superintendent Ficco stated, he would look into the matter. But later stated, he didn't know why I was sent to S.B.C.C.

32. So I filed an grievance 02-152 on 04/03/02, pertaining to my issues, which were denied, then I filed an appeal, which was denied on 04/17/02 with the reason being that I was sent to S.B.C.C. because of my 52A status (see Exhibits E Grievance, Appeal 02-0152, a true and accurate copy ).

33. Contrary to defendants' affidavits, I had not received in my hand an D-Report nor was I brought before any D-Hearing to argue any claims against me. As my cellmate was allowed to face his charges.

34. Defendants had been told by cellmate that contraband was his and that I had no knowledge, the very same day incident had happened on 01/23/02, and made this statement again on 01/24/02.(see Exhibit B Incident Report, a true and accurate copy of defendant' exhibit).

35. Cellmate had been seen by D-Board, received his sanctions and was sent to Higher Security for violating these rules at MCI-Concord, not because he was an 52A, where at S.B.C.C., he was placed in the SMU.

36. I should have been placed back to my status, allowed to return to my housing unit on 01/23, or 25, 2005, once it was know I had not vilated any rules, rather than knowingly allowing me to be transferred along with my cellmate as the same status as of my cell mate. I did not break any rules.

37. I had written to defendant Pepe and to the Commissioner Kathleen M. Dennehy requesting the adress of Defendant Conte' and

(8)

defendant Collins(see Exhibit G, Letters, a true and accurate copy of letters) so that I may serve them. I did not receive any response.

    38. Defendants Conte', Collins, Pepe and John Does 1,2,3 did not intervene at any time to prevent my violations of my due process from happening.

    39. The foregoing factual allegations create a genuine issue of material fact and will, if proved at trial, entitle plaintiff to judgment, as explained in the brief submitted with this declaration.

Pursuant to 28 U.S.C.§1746, I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*
James G. Heyward, W82441
Pro se
MCI-Norfolk
P.O. Box 43
Norfolk, MA. 02056-0043    Date: 7.26.05

(8)

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the Plaintiff's Declaration in Oppostion to Defendants' Motion Fot Summary Judgment was served upon the defendants' Attorney Wendy C. Weber, Departmenet of Correction, Legal Division, 70 Franklin Street, Suite 600, Boston, MA. 02110-1300, by first class mail.

Date: 7-26-05

James G. Heyward, W82441 Pro se
MCI-Norfolk
P.O. Box 43
Norfolk, MA. 02056-0043