UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-10325RCL.

JAMES G. HEYWARD,

   Plaintiff,

v.

CONTE', et als.,

   Defendants.

**BRIEF IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION**

Statement of the Case

   This is a §1983 action filed by a prisoner at MCI-Norfolk, who at the time of incident was an Pretrial Detainee(52a) seeking damages, for compensatory, punctive based on the prison officials deliberate indifference, alledging wrongful detainment in administrative segregation denial of due process in disciplinary procedures and denial of notice of review hearing with an opportunity to respond to the disciplinary charges were in violation of the Due Process Clause of the 5th, 8th, and 14th Amendment to the U.S. Constitution.

   And that the defendants conspired to further punish and violate plaintiff's right to be free of retaliation by transferring him to an Super Maximum Security Faculty Souza-Baranoswki Correctional Center(S.B.C.C.), which is inhabited by violate inmates. Defendants have filed a motion for summary judgment as to the plaintiff's claims against n-med defendants, Conte', Pepe and Collins, arguing that their conduct didnot violate plaintiff's due process.

Statement of Facts

(2)

The plaintiff's declaration submitted in response to the defendants' motion states that on the morning of January 23,2002, he was taken to Suffolk Superior Court. On his return, was told that he ws going to Dept. 9. That during an routine cell search (2) two homemade weapons (shanks) were found. He was placed in Dept.9. His cellmate had admitted that plaintiff had no knowledge of weapons and admitted to ownership of both weapons, and had been placed in Dept.9. prior to plaintiff's return. On or about January 24, 2002, cellmate was interviewed by defendant Collins. To which he again admitted to ownership of weapons. On or about January 25, 2002, defendants Conte', John Doe 3 made rounds in Dept.9. On or about January 26, 2002, plaintiff was interviewed by the defendant Collins, John Doe 1, made a statement of denying any knowledge to weapons, if cellmate had any enemies. And was placed back in lockup. On or about January 26,2002, ceelmate had been seen by defendant John Doe 2(D-Officer), had a D-Hearing been given his sanctions after pleading guilty and stating that plaintiff had no knowledge of weapons, admitted to ownership.

On January 29,2002, plaintiff and cellmate are transferred to S.B.C.C. and placed in SMU. Plaintiff had not still received an D-Report in hand or been seen by D-Officer as cellmate had been. On Febuuary 01,2002, plaintiff is palced in Oreintation Unit after questioning why he's in the SMU. Lt. makes an call to defendant Collins and is told plaintiff does not have an D-Report. Then is housed in G2- Unit which is considered the aggressive block.

The defendants' Memorandum of Law in support of their Motion for Summary JUdgment w/exhibits tell an different story. Defendant

claim that when the plaintiff was transferred to S.B.C.C.'s SMU it was occasioned by the limited segregation space at MCI-Concord, and that plaintiff was an 52A, relief was requested from S.B.C.C. and plaintiff was sent there pending conclusion of the Investigation and final determination whether he would be charged with a disciplinary report for the recovered weapons. On Febuary 01,2002, since MCI-Concord officials had concluded their investigation and decided not to pursue a disciplinary proceeding against the plaintiff, he was released from administrative segregation and placed instead in the Orientation Unit.

### PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

Defendants have moved for summary judgment on the plaintiff's claim concerning violation of his due process. Pursuant to Local Rule 56.1 of this court, the plaintiff submits the following list of genuine issues of material facts that require the denial of the defendants' motion.

1. Whether defendants had knowledge or was told on January 23,2002, day of incident by cellmate that plaintiff had nothing to do with alledged contraband that was found.

2. Whether defendants had knowledge on January 24,2002, one weekday after incident, if the defendants were told an second time that plaintiff had nothing to do with contraband by plaintiff's cellmate.

3. Whether on January 24, 2002 plaintiff made the statement of...due to the number of snitches in the camp (or) stated... that is inmate Shaheeds problem.

4. Whether cellmate stated, he told his cellmate about what transpired.

5. Whether plaintiff was interviewed on January 24, 2002 and not 3 or 4 weekdays later.

6. If on January 24, 2002, defendant Collins informed plaintiff that if Shaheed did not verify his story both inmates would go through the disciplinary process.

7. And on January 23,2002 and January 24, 2002, defendants were told plaintiff had nothing to do with weapons, but was left in segregation?transferred out anyways.

8. Defendants exhibit E Incident Report dated 01/24/01, wrong date should read 01/24/02, 3rd paragraph-last sentence states that Inmate Shaheed and Heyward go through the disciplinary process for weapons confiscated in their cell.

9. If #8 is true,Why did plaintiff never receive D-Report in hand oneweekday after incident, or had an proper disciplinary hearing or was seen by D-Officer, to face the alledge charges.

10. Whether the Notice Pursuant to 103 CMR 423 Special Management dated 01/29/02 marked with an X-stating, "Is placed in Administrative Segregation following a Disciplinary hearing, shows why plaintiff was being held in SMU, shows #8 is true.

11. Notice Pursuant to 103 CMR 423-Special Management is dated placement 1/23/02. At this time the defendants had know plaintiff had not violated any rules But allowed false charges to continue. Notice is signed by Deputy Superintendent of Classification Scott _?_ unable to make out his last name, dated 1/29/02 day of transfer, 5 to 6 days after being told by plaintiff's cellmate that shanks were not the plaintiffs.

12. Defendants contracdict themselves in stating that plaintiff

(5)

was sent toS.B.C.C. from MCI-Concord, because he is an 52A, when reviewing defendants Exhibit K, it's clearly marked at the top of this exhibit is **1/29/02: To SBCC From MCIC-Manuf a weapons. Joel**
Shows that #8,#9, has truth to it.

    13. Affidavit of John Marshall states inaccurate claim that plaintiff was housed in general population from March 2002 through September 2003.

    14. Whether plaintiff's actions on January 31,2002, in speaking to SBCC SMU Lt., requesting to be released from SMU, because of lack of ticket, pushed his release from SMU.

    15. Whether P2-Housing Unit at SBCC is an Aggressive Housing Unit or General Population UNit.

    16. Whether defendants concluded that on 02/01/02 that plaintiff would not be given an D-Report.

    17. Whether SBCC officials knowingly knew why plaintiff was at SBCC.

    18. Whether SBCC 52As' are there because of violating any rules at other institutions, before arriving at SBCC.

    19. Whether the seventy-two(72) pretrial detainees mentioned by Assciate Deputy Commissioner John Marshall(in his affidavit) housed at SBCC, during March 2002 through September 2003, have D-Reports, sanction, and do not.

    20. How long plaintiff was housed in P2 Unit Aggressive Unit is not general population unit.

    21. Whether plaintiff was given due process in disciplinary procedure.

22. Whether plaintiff not receiving D-Report cured any wrongful deprivation of liberty and trust which resulted from due process violation.

## ARGUMENT

### POINT I

**THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE SUMMARY JUDGMENT FOR THE DEFENDANTS ON THE PLAINTIFF'S DUE PROCESS CLAIMS**

Summary judgment is to be granted only if the record before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A "material" fact is one that "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc.,477 U.S.242,248(1986). Cassesso v. Commissioner of Corrections, 390 Mass.419,422(1983).

The declaration of plaintiff and the defendants' memoradum of law in support of motion for summary judgment/defendants statement of undisputed material facts, and exhibits(D-Report/Incident Report) are squarely contradictory as to why the plaintiff was sent to higher security at S.B.C.C.

The moving party bears the burden of affirmatively demostrating that there is no genuine issue of material fact on every relevant issue. Penderson v. Time Inc. 404 Mass. 14,16-17(1989).

The allegations in the plaintiff's declaration portray a completely needless abuse of power against an Pretrial Detainee, by not following within the proper Due Process Procedures, when plaintiff was alledged to have violated any institutional rules. When infact he had not. There is clearly a genuine issue of fact.

(7)

The factual dispute is also material. The facts alledged by the plaintiff are evidence that the defendants were acting "maliciously and sadistically to cause harm", they would support a jury verdict in plaintiff's favor. see Miller v. Leathers, 913 F.3d. 1085, 1088(4th. Cir.1990)(retaliatory intent could be inferred from officials action) cert. denied 111 S.Ct. 108(1991).

The defendants' own exhibits submitted contradict their claims of only sending plaintiff to S.B.C.C., because he was an 52A, because of limited bed space in the segregation unit at MCI-Concord. These exhibits clearly state and show the defendants deliberate indifferences, in subjecting the plaintff to further punishment and violate his right to be free of retaliation, by his continue placement in Dept.9.,SMU, G2-Unit, denial of due process in disciplinary procedures and the denial of notice of review hearing with an opportunity to respond to the disciplinary charges.

While the defendants knew as of day of incident and the day after the incident that the plaintiff was innocent of alledged charges.

I. **CONTRARY TO DEFENDANTS CLAIM, PLAINTIFF HAS NOT FAILED TO STATE ANY CLAIM FOR DAMAGES AGAINST DEFENDANT PEPE IN HIS OFFICIAL CAPACITY.**

Defendant Pepe is being sued in his official capacity as the successor to the previous MCI-Concord Superintendent Conte'. It has always been the plaintiff's intent to sue defendant Conte', who at the time of incident was the superintendent of MCI-Concord. Mass R.Civ.P. 25(d)(1) Public Officers' Death or Separation From Office reads:

> 1. When a public officer is a party to an action in official capacity and during it's pendency dies, resigns, or other

the reports for the charges that plaintiff Incident Report stated, (3) Failure to keep ones person or ones quarters in accordance with institutional rules. (4) Being out of place, (11) Misuse of authorized medication, for example the unauthorized accumulation of prescribed medication. These codes are from 430.24:Code of Offenses, which truly contradict what plaintiff or his cellmate was alledged to be charged.(see Exhibit B, Incident Reportcode#_), were all apparent from the documents created in the course of disciplinary investigation. Moreover, the plaintiff identified the due process violations in his grievances/appeals and from documents within the defendants own possession. So the defendant(Superintendent) knew just what to look for.

This is a case where the defendant Cont'/Pepe "personally had a job to do, and he did not do it", and his failure to do his job was "so likely to result in the violation of the Pretrial Detainee's Constitutional rights.

Defendants are not entitled to qualified immunity in that capacity, because they are alledged to have violated clearly estabished constitutional procedures.

### III. CONTRARY TO DEFENDANTS' CLAIM, PLAINTIFF'S DUE PROCESS RIGHTS WERE VIOLATED WHEN HE WAS TRANSFERRED TO HIGHER SECURITY, ACCORDINGLY TO STATE AND FEDERAL LAW.

Plaintiff's claim for damages and relief under 42 U.S.C. 1983 requires a show that the defendants knowingly violated his Constitutional or Fedral Statual Rights under the color of state law. see Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90S.Ct. 1598,1604, 26L.Ed.2d. 142(1970); Temple v. Marlborough Div. of the District Court Dept., 395 Mass. 117, 122, 479 N.E.2d. 137(1985); Martino v. Hogan, 37 Mass.App.Ct. 710,714, 643N.E.2d. 53(1994).

(11)

In the case at bar the defendants transferred the plaintiff from MCI-Concord to S.B.C.C. under the pretense that he was suspected of manufactoring an weapon. This is clearly supported by the defendants own exhibits. The defendant in their motion for summary judgment provided numerous Exhibits, specially Exhibit K, of the defendnats motion shows. The reason plaintiff was transferred on 1.29.02 "to SBCC from MCIC-manuf a weapons". This alledge account sets forth the defendants' actions in violating the plaintiff's due process rights. see exhibit F.

### A. THE PLAINTIFF'S PLACEMENT IN ADMINISTRTIVE SEGREGATION DID VIOLATE THE PLAINTIFF'S DUE PROCESS RIGHTS.

In Bell v. Wolfish, 441 U.S. 520, 535(1979), the Supreme Court set the standard " a detainee may not be punished prior to an adjudiction of guilt in accordance with due process of law". The defendants knew at the time of the plaintiff's transfer that he had not violated any rules or regulations. This was supported by defendant Exhibit "E", the MCI-Concord, Incident Report, provided by the Internal Perimeter Security[1/] Officer Lt. Brian Collins. In his report the following in paragraph three:

> "On January 24, 2002 Inmate Shaheed was interviewed in regards to the weapons being found in his cell. Inmate Shaheed admitted to ownership of the homemade weapons. Inmate Shaheed stated his roommate had nothing to do about it. Inmate Shaheed was asked about his enemy situation. Inmate Shaheed refused to identify his enemy stating I don't snitch. Inmate Shaheed was informed both inmates housed in that cell are responsible for contraband found in their cell. Inmate Shaheed stated I don't have anything further to say "(I'll take care of it on the street). Inmate Shaheed was asked did you tell your roommate about the incident. Inmate Shaheed told his roommate about what transpired. Inmate Shaheed and Heyward go through the disciplinary process for the weapons confiscated in their cell.

---

1/ These are officers that conduct investigation and make a conclusive finding of guilt, prior to the issuance of D-Reports.

(12)

It is well supported that the defendants knew or should have known that the plaintiff was exonerated of any wrong-doing, but insisted totreat him unfairly, nevertheless. The tag of inmate manufacturing a weapon, is an serious claim, under normal environment considered harmful.

In a prison setting thi stigma would warrant custody upgrade, the <u>act</u> that the defendants' commenced upon the plaintiff. When you evaluate the merits its evident plaintiff was transferred to one's opinion. Not factual information of the court.

When one reads the last sentence in defendant Collins' Incident Report it clearly states,"Inmate Shaheed and Heyward go through the disciplinary process for the weapons confiscated in their cell".

Though defendants have made this statement, their actions clearly show that they did not provide the plaintiff with due process in disciplinary procedures, and denial of notice of review hearing with an opportunity to respond to the disciplinary charges, and furthered punished plaintiff by contuing to hold him in Administration Segregation, violating his right to be free of retaliation by transferring him to an super maximum security facility, Souza-Baranoswki Correctional Center(S.B.C.C.) unjustly.

The plaintiff is not challenging his placement into administrative segregation. Plaintiff is challenging that he was not provided due process, once the defendants learned that he was being charged with violating any rules at MCI-Concord, and once they learned that plaintiff was innocent of the alledge charges against him, the defendants did nothing to correct the violation of my rights.

(13)

The defendants did not follow their 103 CMR 430.Disciplinary Proceedings (06/17/03)

430.01 Purpose:
the purpose of 103 CMR 430.00 is establish rules governing the conduct of disciplinary proceedings involing inmates of state correctional institutions, in order to maintain order and to further the social reintegration of inmates.

430.02 Statutory Authorization:
103 CMR 430.00 is issued pursuant to M.G.L.c. 124,§1(b),(i) and (q) and c. 127,§33. 103 CMR 430.00 is not intended to confer any procedural or substantive rights not otherwise granted by state or federal law.

430.04 Applicabilty :
103. CMR 430.00 is applicable to all employees and to inmates housed at all correctional institutions within the Department of Correction.

430.06 Definitions
Preponderance of Evidence-a belief, formed sfter weighing the evidence, that the proponent's contention is more probably true than false.

Hearing Officer- a hearing officer appointed by the superintendent to conduct disciplinary hearings.

430.09 Responsibilities of the D-Officer:
(1) within two weekdays fromreceipt of the D-Report, the D-Officer shall review the D-Report, make whatever further investigation he deemd necessary and do one of the following:
(a) dismiss theD-Report;
(b) with the approval of the superintendent, take no immediate action on it pending the receipt of further information or
(c) proceed with formal action.

(2) if the D-Officer decides to proceed with formal D-action,he shall, within two weekdays from the conclusion of the review, designate the offense as minor or major and may revise or supplement the D-Report. In cases where the D-Officer determines that a sentence to a Department D-UNit maybe warranted, he shall forward a copy of the D-Report to the Commissioner's Special Hearing Officer.

430.11 Proceding in Major Matters: Notice and Scheduling of Hearing Before a Hearing Officer:
(1) within one weekday of the designation of the offense as a major matter, the disciplinary report, a notice of hearing and a request for representation and/or witness for shall be served upon the inmate by the disciplinary officer or his designee.

(2) the disciplinary officer shall schedule a hearing before a

hearing officer within a reasonable time, but not less than 24 hours sfter the inmate has been served with both the disciplinary report and the notice specifying the time of hearing. The disciplinary officer or hearing officer may continue a hearing at his discretion. The inmate shall be given written notice of such continuance and the new date for the hearing.The inmate shall be entitled to one continuance for good cause provided that any request for a continuance must ordinarily be made atleast 24 hours prior to the scheduled time of the hearing.

(3)an inmate may waive any right to a disciplinary hearing. A inmate mat waive his right to appear before the hearing officer such waivers shall be appropriately documented.

(4) an inmate may waiver any right to a disciplinary hearing and enter a guilty plea to the disciplinary officer. The disciplinary officer should conduct an interview with the inmate and may assess mitigating circumstances presented by the inmate. The disciplinary officer shall then impose a sanction inaccordance with 103 CMR 430.25. An inmate may appeal the sanction in accordance with103 CMR 430.18.

In this case, it is clear that the defendants did not engage in proper disciplinary proceedings, pursuant to 103 CMR 430, even though defendants Exhibit E, Incident Report filed in court states, "Inmate Shaheed and Heyward go through the disciplinary process for the weapons confiscated in their cell. The plaintiff was entitled to full due process, and his due process claimshould be granted.

It's atleast arguable that the defendants failed to provide plaintiff with due process hearing consonant with Wolf. In Parratt, the Supreme Court drew a distinction between deprivations resulting from " the unauthorized failure of agents of the stae to follow established procedures" and those that "occur as a result of some established state procedure," Parratt v. Taylor 527,451, U.S. at 543, 101 S.Ct. 1908 at 1917. The court held that where a deprivation results from the "unauthorized" failure of a state official to follow established procedure, the due process inquiry expands to consider whether the common law or statutes of the state provide an adequate remedy for the deprivation,Id. at 543-44, 101S.Ct. at 1916-17.

(15)

Only where those remedies are inadequate is the state thought not to have provided all the process that is constitutionally "due"; only then may persons who alledge that they have suffered a deprivation proceed under Z1983.Id. Due process clause is "to hold state officials accountable for their abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue". Id. at 136, Zimmerman v. Burch, 110S.Ct 975 at 989. To that end, the court concluded that those state officials who are granted authority to effect deprivations have imposed upon them by the Constitution "the state's concomitant duty to see that no deprivations occur without adequate procedual protections". Id. at 135, 110 S.Ct. at 988. The Court emphasized that, when given "broad power and little guidance" by state statutes, state officials cannot escape liability for failure "to provide constitutionally required procedural safeguards... by invoking Parratt and Hudson, Id".

Plaintiff's allegations, liberally construed, do state a claim for relief from the defendants in their individual capacities under the due process clause and under §1983, because plaintiff was not given an D-Report does not cure the defective disciplinary procedures. An inmate who is or maybe sentenced to a term of confinement in SMU or Higher Security has a right to the procedural protections of the Due Process Clause.

    B.    **THE PLAINTIFF'S TRANSFER TO HIGHER CUSTODY DID VIOLATE DUE PROCESS**

Lowrance v. Achtyh, 20 F.3d. 529, 536(2d. Cir.1994)(due process requires opportunity to <u>be</u> heard within reasonable time after imposition of keeplock). Move was made to punish plaintiff unjustly, for breaking of rules that defendants knew plaintiff had not broken

(16)

## II. THE DEFENDANTS DID RETALIATE AGAINST THE PLAINTIFF AS A MATTER OF LAW.

The defendants knew that plaintiff had not committed any violations on the day of incident and were told again the very next day, by the plaintiff's cellmate, who had admitted ownership of weapons, and stated plaintiff knew nothing about the weapons. Rather than release plaintiff back to his staus, defendents processed plaintiff along with cellmate to higher security S.B.C.C.'s SMU. If it had not been for defendants not allowing plaintiff to return to his proper status, when defendants had been told by, then sanctioned, reclassed cellmate.

Plaintiff does not have a constitutional right to be incarcerated in a particular prison. see Ward v. Dyke, 58 F.3d. 271, 274(6th.Cir.) cert. denied 116 S.Ct. 524 (1995). However, a substantive due process violation may have occurred if the defendants transferred him in retaliation for exercising a constitutional right or if their conduct amounts to an egregious abuse of governmental power in that it shocks the conscience. see Braley v. City of Pontcia, 906 F.2d. 220, 225-226(6th Cir. 1990).

There is no record of why the defendants dropped the D-Report. Before the defendants finally dismissed the D-Report(charges) plaintiff, he had spent approximatialy ten days in disciplinary detention, and had to stay at S.B.C.C. for about 600 days. Plaintiff's dtdention and loss of privileges constitute actual injury caused by the violation of his due process rights. see Carey v. Piphus, 435 U.S. 247, 263-64, 498 S.Ct. 1042, 1052-1053, 55 L.Ed.2d. 252(1978). Transfer from MCI-Concord to maximum security institutions is used by the defendants for disciplinary purposes.

(17)

In the present case, it is clear that plaintiff was continually confined and transferred to S.B.C.C.'s SMU only for punishment purposes and there is no indication in the records(reports) that plaintiff would have been confined in S.B.C.C. 's SMU for any other reason. Plaintiff had not violated any rules to justify transfer to S.B.C.C.'s SMU, then his placement into P2 Unit, which houses Aggressive inmates. And being held at S.B.C.C. for apprx. 600 days.

Defendants conspired to deprive him of his constitutionally protected rights in violation of 42 USC.§ 1985, by knowingly sending plaintiff to higher security when they knew he had not violated any rules.

1. after placing plaintiff in lockup on 01/23/02;
2. on 01/23/02, after being told by cellmate plaintiff had no knowledge of weapons;
3. being told again on 01/24/02, by cellmate plaintiff had nothing to do with weapons;
4. even after cellmate had plead guilty, at his D-Hearing to ownership, defendants still refused to release plaintiff;
5. defendants kept plaintiff in lockup, transferred plaintiff along with cellmate, when defendants knew plaintiff had done no wrong.

### III. THE DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE PLAINTIFF'S 8th AMENDMENT CLAIM.

Plaintiff sustained actual damages as a direct result of the violation of his due process constitutional rights, lossing canteen items just brought on January 23, 2002, other items already in plaintiff's possession. Having to be housed at S.B.C.C. apprx. 600 days. Graham v. Baughman, 772 F.2d. 441(8th.Cir.1985)("in order for plaintiff in a § 1983 action to be entitled to compensatory damages for a violation of procedural due process, he must prove that the violation actually was the cause of his injury or deprivation".).

The defendants should have known that such conduct violated plaintiff's due process rights. Defendants did not possess any evidence that plaintiff was guilty of any wrongdoing. Thus it was already been established that no evidence existed to support holding plaintiff in Dept. 9. or transferring.

By looking at defendants own exhibits of reports the record demostrates that an reasonable prison officiala would have known they were violating a clearly established and specific right of the plaintiff.

Plaintiff was deprived of a fair hearing in violation of his constitutional rights. That deprivation caused him to remain placed in MCI-Concord's Dept.9., then to be rtansferred to S.B.C.C. SMU-P2, Aggressive Unit. Which was for approximately 600 days. This wrongful placement is the actual injury.

If plaintiff had been given an hearing, it would have been shown plaintiff was innocent of violating any rules, would have been allowed to call witnesses, never loss his property. By keeping plaintiff in Dept. 9., when defendants knew he was innocent of charges, defendants' failure to release him was "an arbitrary failure torestore the measure of liberty to which plaintiff was entitled--a substantive right".

The plaintiff was a pretrial detainee during events that form the basis of his complaint. In Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed. 2d. 447(1979), the Supreme Court determined that pretrial detainees may not be subjected to treatment amounting to punishment since they have not been adjudged guilty of any crime. Therefore, if a particular act, condition or restriction accompany-

(19)

ing pretrial detention amounts to punishment, it is forbidden, Cupit v. Jones, 835 F.2d. 82, 85(5th. Cir. 1987). In addiction, an action or inactionrelated to a pretrial detainee is considered punishment unless itis reasonably related to a legitimate governmental objective. Plaintiff complaint alledges that after he was placed in MCI-Concord Dept. 9., the defendants had made interviews with his cellmate who admitted that weapons were his own, and that plaintiff had no knowledge of weapons. Cellmate plead guilty at D-Hearing, was sanction to higher security. Defendants had this information but refused to place plaintiff back in general population, he was punished, retaliated against when he was transferred. This transfer was an act of of punishment, which is a legal claim recognizable under a § 1983 claim.

Pretrial Detainees are entitled to protection from adverse conditions of conement created by prison officials for punitive purposes. Parker v. Carpenter, 978 F.2d 190(C.A. 5(Tex.) 1992).

The transfer would not have occurred "but for" the unconstitutional retaliatory motive. If the defendants had followed proper Disciplinary Procedures.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment should be denied.

Respectfully submitted,

James G. Heyward, W82441
Pro se
MCI-Norfok
P.O. Box 43
Norfolk, MA. 02056-0043

Date: 7.26 05

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the Plaintiffis Brief In Opposition to Defendants' Summary Judgment Motion was served, upon the defendants' Attorney Wendy C. Weber, Department of Correction, Legal Division, 70 Franklin Street, Suite 600, Boston, MA. 02110-1300, by first class mail.

Date: 7·26·05

James G. Heyward, W82442 Pro se
MCI-Norfolk
P.O. Box 43
Norfolk, MA. 02056-0043

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.